**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

v.                                                                    Case No.  8:06-cr-488-T-23MSS

**OSTOJA SARIC,**

   **Defendant.**
_____

## AMENDED REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court for consideration of Defendant Ostoja Saric's ("Saric") Motion to Suppress Evidence (the "Motion"), filed on April 20, 2007.[1] (Dkt. 38)  Saric is charged in a two count indictment with making a false statement on his Immigration and Naturalization Form I-485 (Permanent Resident Application), in violation of 18 U.S.C. § 1546(a), and making a false statement to the DOJ Immigration and Naturalization Service, in violation of 18 U.S.C. § 1001(a)(2). (Dkt. 1)  In the Motion, Saric requests that the Court suppress two inculpatory statements, one made in September 2006, the other in December 2006. Saric contends that his statement admitting that he served in the Army of the Republika Srpska (the "VRS") made to agents of Immigration and Customs Enforcement ("ICE") on September 18, 2006, should be suppressed because he did not waive his Miranda rights or,

---

[1] This matter was referred on May 16, 2007, to the Undersigned by the District Court Judge assigned to this case for a Report and Recommendation.

1

alternatively, that he did not waive his rights knowingly, voluntarily, and intelligently. Saric further argues that he was coerced into making the admission. Finally, Saric contends that any admission made in December 2006 should also be suppressed because it is tainted from the events which took place in September.

Having considered the respective positions of the parties, the Undersigned **REPORTS AND RECOMMENDS** that Defendants' Motion be **DENIED**.

FACTUAL BACKGROUND

An evidentiary hearing that addressed the Motion was held before the Undersigned on June 22, 2007. (Dkt. 55) During the course of that hearing Defendant Saric, Agent Boris Baburich of ICE, Civilian Interpreter Ajaz Emini, and Agent Ryan Albritton of ICE testified. On consideration of the evidence, oral testimony, and considering the demeanor and manner of the witnesses on direct and cross examination, the Undersigned makes the following findings of fact:

On or about September 18, 2006, four agents from ICE and Civilian Interpreter Ajaz Emini arrived at Saric's residence in order to interview him as part of an ongoing investigation. Agent Albritton was the case manager assigned to the investigation. Agent Baburich was one of the lead agents and was specially assigned to this case and is fluent in the Serbo-Croatian language. Agent Albritton does not speak Serbo-Croatian. Saric is from Bosnia-Herzegovina and speaks Serbo-Croatian.

The agents and interpreter approached Saric outside of his residence as he

was leaving to go to the grocery store. Their cars blocked his car from exiting the premises but nothing blocked his exit on foot. The agents approached Saric and, through Interpreter Emini, told Saric that they were acting in accordance with a request from the International Criminal Tribunal for the Former Yugoslavia and wanted to ask Saric a few questions. Initially Saric indicated that he was in a hurry to run his errand but he later agreed to speak with the agents on his front porch. Ultimately, Saric consented to the agents' entering the house for an interview. At no time was Saric threatened or forced to permit the agents to enter his home. The Court discounts as not credible evidence adduced through Saric that Agent Baburich displayed his weapon in a show of force to induce Saric to cooperate. There is no evidence that Saric, who admittedly allowed agents to enter his home, was in any way threatened. Further, Saric was never physically constrained by the agents.

Agent Butler began questioning Saric through Interpreter Emini. Agent Baburich also questioned Saric directly in Serbo-Croatian.

During the initial stage of the interview, Saric was shown certain military documents and a roster of the VRS. The agents asked Saric to point out his name on the roster and Saric complied. Thereafter, Saric was handed a document containing <u>Miranda</u> warnings written in Serbo-Croatian. Saric was asked to read the document and sign the paper acknowledging his waiver of rights. Saric read the document but he did not sign it. Subsequently, Agent Baburich asked Saric whether he ever served in the VRS. Saric admitted that he had previously served in the VRS.

3

Saric was then asked more detailed questions relating to his service in the VRS, including questions regarding his rank, battalion, etc. At some point, Saric exercised his Miranda rights and refused to answer any more questions related to his service in the VRS and claimed that the agents' suggestions and/or accusations were fabrications. He terminated the interview and the agents left Saric's residence.

STANDARD OF REVIEW

A defendant may waive his right against self-incrimination, so long as the waiver is voluntary, knowing and intelligent. Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). In determining the voluntariness of such a statement or whether the defendant was coerced by the government into making a statement, the court must consider the totality of the circumstances. United States v. Thompson, 422 F.3d 1285, 1295 (11th Cir. 2005); see also California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam). Miranda warnings must be given only when the suspect is both in custody and subjected to state interrogation. Illinois v. Perkins, 496 U.S. 292, 297 (1990). Custody involves the deprivation of "freedom of activity in any significant way." United States v. Acosta, 363 F.3d 1141, 1150 (11th Cir. 2004). To determine whether a suspect is in custody, a court assesses the objective circumstances of the situation from the perspective of a reasonable person in the suspect's position. Stansbury v. California, 511 U.S. 318, 323 (1994) (per curiam); United States v. Muegge, 225 F.3d 1267, 1269-71 (11th Cir. 2000). The location of interrogation, although not dispositive, is considered a factor in determining whether a suspect was

in custody. See Beckwith v. United States, 425 U.S. 341, 345-47 (1976). The defendant bears the burden of proving custody. See United States v. Charles, 738 F.2d 686, 692 (5th Cir. 1984).

DISCUSSION

Saric contends that he did not waive his Miranda rights and attempted to invoke his right to remain silent. Specifically, Saric argues he did not waive his Miranda rights because he twice refused to speak to the agents and refused to sign the Miranda statement. Alternatively, Saric claims that he did not knowingly, voluntarily, and intelligently waive his Miranda rights. Saric asserts that he did not fully understand his rights even though he read the Miranda document. Saric also claims that Agent Baburich raised his voice twice and brandished his weapon during the interview, thereby putting Saric in fear. Saric asserts that he is from Bosnia, a country where police brutality and coercive tactics are common. As such, Defendant contends that his admission that he was a member of the VRS was coerced by fear that Agent Baburich would take further measures in order to force an admission.

The Court finds, however, that Saric knowingly and voluntarily admitted to the agents that he had previously served in the VRS. At the time he made this statement, he was not in custody and had agreed to a casual interview with the agents. In fact, at no time was Saric physically constrained by the agents. When he was first approached by the agents in front of his residence, Saric was free to walk away from his house, to walk into his house and lock the door, or to tell the

agents to leave. Instead, Saric consented to having the agents come into his home for an interview.

Accordingly, the Court finds that Saric was not in actual or de facto custody during the interview conducted inside his home. See Beckwith, 425 U.S. at 345-48 (holding that the defendant was not in custody when IRS agents conducted a consensual interview of the defendant inside his home); see also U.S. v. Newton, 369 F.3d 659, 675 (2d Cir. 2004) (noting that "absent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial"); U.S. v. Brown, 441 F.3d 1330, 1347-49 (11th Cir. 2006) (holding that the defendant was not in custody when he was interviewed in the home of family member where the defendant often resided and the defendant knew he was free to leave or terminate the interview at any time). As such, Saric was not required to be given Miranda warnings as a matter of law. While the warnings were a reasonable safety precaution to ensure the admissibility of the contents of the interview, they were not required by law.

Even if Saric were entitled to Miranda warnings, the facts demonstrate that the warnings were adequately given, fully understood, and voluntarily waived. Once inside the house, Saric pointed out his name on a roster shown to him by the agents. He was then given the Miranda document and was given the opportunity to read the document. It is evident that Saric fully understood his rights after reading the document, especially in light of his testimony. At the hearing Saric recited from

memory, spontaneously, that the Miranda document stated that he had the right to remain silent, that he had the right to an attorney, and that he had a right to refuse to sign the document. Refusing to sign the Miranda document, without more, does not constitute an assertion of one's Miranda rights. U.S. v. Middleton, 2007 WL 1720469 at *4 (11th Cir. June 15, 2007). Saric's willingness to continue answering the agents' questions is a clear indicia of his waiver of Miranda rights or refusal to invoke them as was his right. In fact, Saric's subsequent conduct belies any assertion that he had invoked his Miranda rights by refusing to sign the document. In this regard, when the agents inquired into greater detail the extent of Saric's service in the VRS, to a point where Saric felt uncomfortable about full inculpation, he affirmatively invoked his rights by refusing to answer further questions, terminating the interview and directing that the agents leave his home. At that point, Saric admits, the agents left Saric's residence immediately without asking any more questions.

The Court further rejects Saric's contention that he was fearful of Agent Baburich and therefore made a coerced admission. As noted, Saric allowed agents into his home with no physical force or threat from them. During the interview, Saric felt sufficiently emboldened to state to the agents that all of their documentation was fabricated, undermining any suggestions that he felt intimidated by Agent Baburich or the other agents. Agent Baburich testified that he did not raise his voice or brandish his weapon during the course of the interview. Agent Albritton and

Interpreter Emini corroborated this testimony. Even if Agent Baburich raised his voice, his elevated, animated expression did not invoke any apparent fear in Saric. Finally, as stated above, Saric felt free at some point to refuse to answer questions about the details regarding his service to the VRS and free to demand that the agents leave his residence, which they did.

CONCLUSION

For the foregoing reasons, the Undersigned finds no Miranda warnings were required in this case. Even if they were required, they were properly given and Saric knowingly, voluntarily, and intelligently waived his Miranda rights during the interview on or about September 18, 2006. Further, Saric was not coerced into making the inculpatory admission on that date. As such, the Court need not address whether any statement made subsequent thereto has been tainted by the circumstances of the earlier interview. Accordingly, the Undersigned **REPORTS AND RECOMMENDS** that Defendant Saric's Motion (Dkt. 38) should be **DENIED**.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida on this 16th day of July 2007.

Copies to:

Counsel of Record

Judge James D. Whittemore

_____
MARY S. SCRIVEN
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).